UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CHANG YEON JO,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security, et al.,<br>Respondents. | Case No. 5:26-cv-04923-DTB<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.**

**PROCEEDINGS**

On August 27, 2026, petitioner Chang Yeon Jo ("Petitioner"), represented by counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). (Docket No. 1).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

The Petition alleges the following claims for habeas relief: (1) Petitioner's detention violates 8 U.S.C. §§ 1226(a) and 1357(a)(2); (2) Petitioner's detention violates her right to due process under the Fifth Amendment; and (3) Petitioner's detention without an individualized showing of necessity violates her right to due process under the Fifth Amendment. (Docket No. 1 at 64-86).[1]

On September 3, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 5), Respondents filed an Answer to the Petition ("Answer") (Docket No. 8), accompanied by two exhibits (Docket Nos. 8-1 and 8-2)

On September 4, 2026, Petitioner filed a Reply to the Answer. (Docket No. 9).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND[2]

Petitioner is a 71-year-old native and citizen of South Korea who has continuously resided in the United States since approximately 2006 after lawfully entering the country on a visitor visa.[3] (Petition at ¶¶ 2, 50, 56). Since her arrival in this country, Petitioner has established a permanent life in California. (Id.). She married her long-term boyfriend, a United States citizen, on May 23, 2025. (Id. at ¶¶ 2, 50, 57 ). Soon after her marriage, she applied for adjustment of status by way of her husband. (Id. at ¶¶ 3, 50, 57). On September 2, 2025, she submitted her application for adjustment with the United States Citizenship and Immigration

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

[2] The Background is based on the allegations in the Petition.

[3] But see Petition at ¶ 43 ("Petitioner has continuously resided in the United States since approximately April 2001.").

Service ("USCIS"). (Id.). Thereafter, Petitioner complied with all requirements of her application process, including submitting to biometric appointments, and appearing for her interviews for the underlining adjustment of status applications, as well as obtaining a work permit. (Id. at ¶¶ 3, 50). On June 10, 2026, after she appeared for her final interview with USCIS for the adjudication of her pending adjustment application, she was detained by Immigration and Customs Enforcement ("ICE") agents. (Id. at ¶¶ 5, 50, 62-63, 66).

On an unspecified date, Petitioner was arrested for a criminal incident, but no charges were filed after a thorough investigation. (Id. at ¶ 7).

During the approximately twenty years preceding her arrest by ICE, Petitioner did not live transiently or anonymously; rather, she established a permanent home, engaged in gainful employment, raised a family, and developed substantial and enduring ties to her community in California. (Id. at ¶¶ 51, 81). During this same period, Petitioner maintained stable employment, including working as a custom tailor for the past several years. (Id. at ¶ 53). She has filed federal income tax returns during her period of employment and has continued to support herself and her family through lawful employment authorization. (Id.).

Petitioner is an elderly woman with severe medical issues, which have led to constant fainting, exhaustion and depression. (Id. at ¶ 52).

As of June 10, 2026, Petitioner had spent approximately twenty years living openly in the United States without any demonstrated history of dangerousness, absconding, or failure to comply with immigration laws or directives of immigration officials. (Id. at ¶¶ 55, 64-65).

Petitioner is being detained at the Adelanto ICE Processing Center in Adelanto, California. (Id. at ¶¶ 42, 48; see https://locator.ice.gov/odls/#/results).

/ / /

/ / /

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due

process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

/ / /

/ / /

/ / /

## IV.

## DISCUSSION[4]

### A. Petitioner is Entitled to Habeas Relief.

Petitioner claims that her arrest and detention on June 10, 2026, without any pre-deprivation notice or hearing, constituted a violation of due process. (See Petition at ¶¶ 43, 50, 55, 80-87). Specifically, Petitioner alleges that she has lived openly in the United States since she lawfully arrived on a visitor visa in 2006 and that she has pursued lawful immigration status pursuant to the governing laws and under the instruction of the government. On September 2, 2025, Petitioner submitted an application to adjust her immigration status, based on her marriage to her long-term boyfriend, and during the pendency of her application, the government has permitted her to remain free and at liberty while exercising authority over her application for immigration relief. (Petition at ¶¶ 3-5). Petitioner has been in affirmative contact with immigration authorities concerning her application to adjust her status, and has submitted all of her necessary paperwork, appeared for her biometric appointments, obtained a work permit, submitted to her medical examination, and voluntarily appeared before immigration officials during the pendency of the application process. (Id.). Petitioner owns her own home and has maintained a fixed residential address. (Id. at ¶ 73).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690. The protection afforded by the Due Process

[4] As an initial matter, the Court rejects Respondents' contention in the Answer that Petitioner must first exhaust her remedies with the Board of Immigration Appeals ("BIA") (see Docket No. 8 at 3). Constitutional claims are generally excepted from the exhaustion requirement because neither immigration judges nor the BIA are permitted to consider constitutional challenges to the statutes they administer. Sola v. Holder, 720 F.3d 1134, 1135 (9th Cir. 2013).

Clause runs to citizens and noncitizens alike. J. G. G., 604 U.S. at 673 (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Evaluating the contours of Petitioner's due process rights proceeds in two steps: "[T]he first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596 at *2 (E.D. Cal. July 14, 2025) (citing Ky. Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

Here, the Court finds that Petitioner has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for her re-detention, based on the government's decision not to detain her or otherwise impede her liberty while exercising authority over her for purposes of adjudicating her application for immigration relief. Indeed, a number of federal courts in California have found a protectable liberty interest in nearly identical circumstances. See Tzoc v. LaRose, Case No. 26-cv-3965-GPC-VET, 2026 WL 2227161 at *2-3 (S.D. Cal. Aug. 3, 2026); Dai v. Janecha, Case No. 5:26-cv-03966-PD, 2026 WL 2164154 at *1-2 (C.D. Cal., July 24, 2026); E.E.O.H. v. Noem, Case No. 1:26-cv-01266-JLT-SAB-HC, 2026 WL 850363 at *4-5 (E.D. Cal. Mar. 26, 2026), report and recommendation adopted, 2026 WL 967670 (E.D. Cal. Apr. 9, 2026); Villanueva-Montanez v. Lyons, Case No. 2:26-cv-00954-DAD-CKD, 2026 WL 797930 at *1 (E.D. Cal. Mar. 23, 2026); Kalkan v. Chestnut, Case No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026); Kharitonova v. Albarran, Case No. 3:26-cv-01362-JSC, 2026 WL 531441 at *2 (N.D. Cal. Feb. 25, 2026).

/ / /

As demonstrated in the cases cited above, Courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government elected not to detain them, but instead, knowingly allowed them to remain at liberty in the United States. See Yu v. Giles, Case No. 26-cv-04692-MBK, 2026 WL 2455945 at *4 (C.D. Cal. Aug. 21, 2026) ("Petitioner became subject to detention under 8 U.S.C. § 1226(a) after his visa expired, but the Government elected not to detain him and instead granted him employment authorization while his asylum case remains pending. As Petitioner explains, 'for more than five years the Government knew exactly who and where Petitioner was, authorized him to work, and chose not to detain him.' Dkt. 10 at 3."); see also Orozco-Salazar v. Warden, Case No. 26-cv-04555-KES, 2026 WL 2497334 at *3 (C.D. Cal. Aug. 25, 2026); ("Courts often cite evidence that the government had been aware of the noncitizen's continued presence in the U.S. and yet had taken no action to detain the noncitizen for months or years after the visa expired."); Gagik T. v. Chestnut, et al, Case No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026) (granting release to a noncitizen who entered the country on a visitor visa, applied for asylum, was granted employment authorization and remained out of custody for six years); Kharitonova, 2026 WL 531441 at *2 ("Although the Government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual who was initially detained.").

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

The Court finds the reasoning of these cases persuasive. Petitioner entered the United States lawfully pursuant to a visitor's visa, and eventually proceeded through the established lawful process to apply to the government to adjust her immigration status following her marriage to her long-term boyfriend. (Petition at ¶¶ 2-3). Petitioner applied for adjustment of status on September 2, 2025, and the government accepted and processed her application. (Id. at ¶ 3). Petitioner has complied with every requirement and request made of her by the government during the application process. (Id.). Petitioner submitted to her biometric appointments as well as to a medical exam, supplemented and updated her application with documentation, obtained a work permit and maintained a fixed residential address. (Id. at ¶¶ 3-5, 73). Thus, Respondents have had full knowledge of Petitioner's identity, immigration status and location during the pendency of her immigration application, or since September 2025. With this knowledge, the government has continuously elected not to detain Petitioner while exercising authority over her legal proceeding, all the while permitting her to remain free and at liberty while her application was pending.

Considering the arc of the government's sustained conduct towards Petitioner, the Court finds that Petitioner developed a substantial liberty interest in continued release.

In light of this protected liberty interest, the Court turns to consider what process she is owed before the government may take that liberty interest away. Petitioner claims that due process was required before she was taken into custody. (Petition at ¶¶ 284-300). She thus argues, *inter alia*, that the appropriate habeas remedy is for her to be released back to the community. (Id. at ¶ 313). The Court agrees.

/ / /

/ / /

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three factors set forth in Mathews:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

As discussed below, the Court finds that each of the three Mathews factors supports Petitioner's constitutional right to process before she was re-detained.

With regard to the first factor, as discussed above, the liberty interest at stake here is significant. Petitioner has a substantial interest in remaining in the community with her husband and pursuing her application for immigration relief. See Ortega v. Bonnar, et al., 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (holding that the petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Turning to the second Mathews factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide her with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews, 424 U.S. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). And where a petitioner has not received a hearing or other process prior to the revocation of her liberty, "the risk of an erroneous deprivation [of liberty] is high." Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

Finally, Respondents have not articulated any countervailing government interest—the third Mathews factor—that supports providing this process only after Petitioner has been detained. Due process "usually" requires a hearing before the State deprives a person of liberty or property. Zinermon, 494 U.S. at 127. Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to impossible to provide pre-deprivation process. Id. at 128. But neither of those exceptions appears to be applicable to the instant circumstances. Respondents have not argued that Petitioner was an imminent risk of flight or that some other exigency required her immediate arrest and detention when she appeared for her scheduled appointment with USCIS on June 10, 2026.

In short, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing [or other procedure] is low." Ortega, 415 F. Supp. 3d at 970; see also Morrissey v. Brewer, 408 U.S. 471, 483 (1972) (noting that "the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has no interest in revoking parole without some informal procedural guarantees"). Because each of the Mathews factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention—which was accompanied by no process—violates the Due Process Clause.

Many courts considering similar circumstances have found that a post-detention bond hearing does not rectify the harm of a due process violation because the petitioner "will have already suffered the harm" that such petitions raise—her potentially erroneous detention. See e.g., Charan S. v. Warden, CA City, Case No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158 at *6 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's

liberty and detaining him without any process for nearly two months"); Saballos Rosales v. Noem, Case No. 5:26-cv-00112-JWH-MBK, 2026 WL 761371 at *3 (C.D. Cal. Mar. 16, 2026) (granting TRO and finding that "the post-detention process [of a bond hearing] that Rosales did receive, and will receive, is no substitute for the pre-detention process she was owed.") (citing Hasratyan v. Bondi); Hasratyan v. Bondi, Case No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909 at *4 (C.D. Cal. Feb. 2, 2026) (concluding that where a petitioner received a procedurally deficient post-detention bond hearing, "the post-detention process [the petitioner] received and will receive is no substitute for the pre-detention process she was owed"); Domingo v. Kaiser, Case No. 25-cv-05893 (RFL), 2025 WL 1940179 at *3 (N.D. Cal. July 14 2025); see also Riveros-Sanchez v. City of Easton, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the . . . initial failure to provide a hearing.").

As with similar cases in this Circuit, the Court finds that the appropriate remedy in this case is to order Petitioner placed in the position she would have been absent the due process violation—that is, she should be released from custody. See e.g., E.A.T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (granting such relief); Jasbin v. Warden, Case No. 26-cv-579-JES-BJW, 2026 WL 353354 at *4 (S.D. Cal. Feb. 9, 2026) (ordering release due to due process violation despite government's argument that the petitioner was only entitled to bond hearing as a Maldonado Bautista class member); Prior v. Chestnut, Case No. 1:25-cv-01131-JLT-EPG-HC, 2026 WL 309560 at *9 (E.D. Cal. Feb. 5, 2026) (recommending immediate release as appropriate remedy for due process violation).

/ / /

/ / /

/ / /

## V.

## CONCLUSION

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; and (2) that a writ of habeas corpus be issued (a) requiring Respondents to immediately release Petitioner Chang Yeon Jo (A# 236-221-201) from custody, subject to the same conditions (if any) that she was subject to at the time she was arrested and re-detained, (b) ordering Respondents to return all property confiscated from Petitioner during her arrest and processing into detention; (c) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (d) ordering Respondents to file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: September 14, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE